UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| GERALD GADDY, ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> WEXFORD HEALTH SOURCES, INC., and ) <br> DR. JONATHAN EK, ) <br> Defendants. ) | Case No. 20-4195 |

SUMMARY JUDGEMENT ORDER

JAMES E. SHADID, U.S. District Judge:

This cause is before the Court for consideration of Defendant Wexford Health Sources and Defendant Dr. Jonathan Ek's Motion for Summary Judgment. [67]. For the following reasons, the Motion is GRANTED. [67].

I. BACKGROUND

Plaintiff has two surviving claims alleging his constitutional rights were violated at Hill Correctional Center:

a) Defendant Dr. Jonathan Ek was deliberately indifferent to Plaintiff's serious medical condition when he delayed or denied medical care for his osteoarthritis and pain;

b) Wexford Health Sources was deliberately indifferent to Plaintiff's medical condition based on a policy or practice of delaying referral to an outside provider. *See* April 26, 2021 Merit Review Order; June 2, 2022 Summary Judgment Order.

Defendant Warden Stephanie Dorethy was previously dismissed. *See* June 2, 2022 Summary Judgment Order.

I. FACTS

Plaintiff was incarcerated in the Illinois Department of Corrections (IDOC) at Hill Correctional Center (Hill) during the relevant time. IDOC had a contract with Defendant Wexford to provide medical services at Hill and Defendant Dr. Ek provided direct medical care to inmates.

Plaintiff has no formal medical training. (Def. Mot., Plain. Depo., p. 11-12). Plaintiff is familiar with the sick call process at Hill and how to request medical care. (Def. Mot., Plain. Depo., p. 14-16). Inmates could write down their medical request and place it in the mailbox for the Healthcare Unit (HCU). (Def. Mot., Plain. Depo., p. 14-15). In addition, if an inmate was in "a great deal of pain" or there was something "extremely harmful or dangerous going on," the inmate could ask security staff for medical care. (Def. Mot., Plain. Depo., p. 16).

Plaintiff was prescribed physical therapy for his shoulder on September 6, 2018, when he was at Menard Correctional Center. (Def. Mot., Plain. Depo., p. 64; Ex. 3, Wex. # 485). However, Plaintiff was then transferred to Hill on October 4, 2018. (Def. Mot, p. 3). Plaintiff says he did not receive any physical therapy for one week until an order was entered on October 11, 2018. (Def. Mot., Plain. Depo., p. 65; Ex. 3, Wex. #485).

In his deposition, Plaintiff stated he had no idea what caused the delay, and he had no specific evidence Defendant Dr. Ek was responsible. (Def. Mot., Plain. Depo., p. 65). Plaintiff also stated he had no evidence a Wexford policy caused the initial delay. (Def. Mot., Plain. Depo., p. 66).

Once the order was entered, Plaintiff received four days of physical therapy. However, at some point in October of 2018, correctional staff stopped opening the door

2

to allow him to attend the prescribed physical therapy sessions. (Def. Mot., Plain. Depo., p. 40; Ex. 3, Wex. #488). On October 17, 2108, Plaintiff received a disciplinary report based on his failure to report to physical therapy. (Plain. Resp., p. 51, Adj. Com. Rept.). However, a week later the Adjustment Committee found Plaintiff not guilty of the offense and expunged the ticket when it was determined Plaintiff was not allowed out of his wing. (Plain. Resp., p. 51, Adj. Com. Rept.).

During his deposition, Plaintiff stated the cell house correctional officers and command center were responsible for unlocking the doors and allowing him to leave. (Def. Mot., Plain. Depo., p. 42-43). Defendant Dr. Ek adds he does not have any responsibility for inmate movements, nor is he aware of any medical staff member who is responsible for unlocking cell doors or escorting inmates to and from appointments. (Def. Mot., Ek Aff., p. 2).

Plaintiff was seen during nurse sick call on November 1, 2018, after he reported shoulder and knee pain. Plaintiff was provided with ibuprofen and referred for a follow-up visit with a nurse practioner. (Def. Mot., Ek Aff., p. 2; Wex. #488).

Plaintiff returned to nurse sick call on November 21, 2019, with complaints of elbow, knee, and hip pain. Plaintiff was advised he was scheduled for a follow up with a nurse practioner. (Def. Mot., Ek Aff., p. 2). The medical record indicates Plaintiff "stated he would be ok with his current pain meds until his appointment." (Def. Mot., Ex 3, Wex. #491).

Plaintiff disputes this notation and claims he told the nurse he suffered with chronic pain and discomfort in his head, neck, shoulder, back, and knee. In addition,

3

Plaintiff claims he told the nurse his pain was impacting his daily activities. (Plain. Resp., p. 5).

Plaintiff met with the nurse practioner on January 10, 2019. The medical record indicates Plaintiff was examined and his complaints of pain were evaluated. The Nurse ordered a shoulder x-ray, naproxen, an ace wrap for his elbow, and Cymbalta. (Def. Mot., Ek Aff., p. 2; Ex 3, Wex. # 492-93). Defendant Dr. Ek states naproxen is a "nonsteroidal anti-inflammatory medication used to treat muscle and joint pain such as that caused by arthritis." (Def. Mot., Ek Aff., p. 2). Cymbalta is used to treat nerve pain. (Def. Mot., Ek Aff., p. 2).

Plaintiff claims he told the nurse practioner his pain made it difficult for him to wash, sleep, or read, and the pain medication he had received was not helping. Plaintiff further claims he asked for additional testing such as an MRI, appointment with an unspecified specialist, and physical therapy. (Plain. Resp., p. 5).

Plaintiff received the x-ray on January 14, 2019. (Def. Mot., Ek Aff., p. 2, Ex. 3, Wex. # 559). The results indicated there was no fracture or dislocation, but Plaintiff suffered with "severe osteoarthritis." (Def. Mot., Wex. # 559).

Plaintiff was provided with acetaminophen, Cymbalta, Motrin, Naproxen, and a muscle balm similar to Icy Hot from January through May of 2019. (Def. Mot., p. 5, Plain. Depo, p. 81; Ex. 3, Wex, #696-607)

Defendant Dr. Ek met with Plaintiff on March 6, 2019. It is unclear from the record whether Plaintiff requested additional medical care or if this was a follow-up appointment. The Defendant Doctor continued the pain mediations and ordered a

4

steroid injection to provide additional pain relief. Defendant Dr. Ek says he also provided Plaintiff with exercises to help relieve pain and soreness as well as increase mobility. In addition, the Defendant issued a low bunk permit. (Def. Mot., Ek Aff., p. 2-3).

Plaintiff claims he asked Defendant Dr. Ek for an MRI, and a chance to visit with an unspecified outside specialist. Plaintiff claims the doctor told him Defendant Wexford would not approve the request due to costs. (Plain. Resp., p. 6).

Plaintiff says he returned to HCU on March 15, 2019, and informed Dr. Ek the medication for his knee was helping a little, but the other mediation was not having an impact. However, the only medical record from March 15, 2019, was for a visit with Plaintiff's mental health provider. (Def. Mot., Ex. 3, Wex. #461). The doctor's notes indicate Plaintiff stated medication was helping his knee pain, but there are no other notes concerning any other pain or complaint. There are no other medical notes indicating Plaintiff met with Dr. Ek. (Def. Mot., Ex. 3, Wex. #461).

Plaintiff received the steroid injection in his shoulder on March 21, 2019. (Def. Mot., Ek Aff., p. 3; Ex. 3, Wex. #602). Plaintiff claims on this occasion he also complained to Defendant Ek about the need for different pain medication. It is unclear from the record whether Defendant Dr. Ek administered the steroid shot.

Defendant Dr. Ek had a follow-up appointment with the Plaintiff on May 10, 2019. Plaintiff claims during the visit, he again complained about the impact his pain was having on his daily life, and asked for an MRI or referral to an unspecified, off-site specialist, but Defendant Dr. Ek claimed Wexford would not approve the request due to

costs. (Plain. Resp., p. 7). The Defendant Doctor prescribed physical therapy and instructed Plaintiff to continue with exercises on his own until the therapy could begin. (Def. Mot., Ek Aff., p. 3).

Plaintiff received a second steroid injection in his shoulder on June 6, 2019. (Def. Mot., Ek Aff., p. 3, Ex 3, Wex. #602).

Plaintiff returned to nurse sick call on July 12, 2019 with complaints of back pain. Plaintiff was instructed to avoid sports or strenuous activity and provided further education on proper "body mechanics." (Def. Mot., Ek Aff., p. 3; Ex. 3, Wex #370-71). Plaintiff was advised to return if his symptoms persisted or got worse, and he was placed on the schedule to see Dr. Ek. (Def. Mot., Ek Aff., p. 3).

Dr. Ek met with Plaintiff on July 18, 2019. Plaintiff informed the Defendant he had not received his gym pass for physical therapy, so the doctor renewed his order. (Def. Mot., Ek Aff., p. 3). Plaintiff received physical therapy the next day. (Def. Mot., Ek Aff., p. 3).

Plaintiff claims during this visit, he again complained about the impact of his pain on his daily life and asked for additional outside care. (Plain. Resp., p. 8-9).

The medical staff was advised Plaintiff's physical therapy was discontinued on August 19, 2019. (Def. Mot., Ex. 3, Wex. #377). The physical therapist claimed Plaintiff had used his physical therapy time to pull down weights and use the kiosk to send an email. Correctional staff also claimed Plaintiff was previously warned not to do either activity during his scheduled physical therapy time. (Def. Mot., Ex. 3, Wex. #377).

During his deposition, Plaintiff said he was not sure if he used weights, but stated he was in the area by the weights and: "If I'm thinking back, I probably did grab one of those weights or something and then something with…I'm not sure." (Def. Mot., Plain. Dep., p. 30). Plaintiff also said he did not recall using the kiosk during physical therapy time, but said it was possible. (Def. Mot., Plain. Depo., p. 30).

Although Plaintiff's physical therapy was canceled, Plaintiff continued to receive other treatment such as pain medication and another shoulder injection on September 16, 2019. (Def. Mot., Ek Aff., p. 4, Ex. 3, Wex. #381, 579-595). Plaintiff denies receiving a third injection. (Plain. Resp., p. 10).

Plaintiff also stated during his deposition that some of the treatment he received such as the steroid injections did temporarily offer a solution to his pain, but Plaintiff says it did not last as long as he expected. (Def. Mot., Plain. Depo., p. 78-83).

### III. LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact."  Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.; Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

## IV. ANALYSIS

Defendants Wexford and Dr. Ek maintain Plaintiff cannot demonstrate they violated his constitutional rights. To establish an Eighth Amendment violation, Plaintiff must show he suffered from a serious medical need and the Defendant was deliberately indifferent to that need. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir.2008). For purposes of the dispositive motion, the Defendants do not dispute Plaintiff suffered from a serious medical condition.

To determine whether the Defendants were deliberately indifferent to Plaintiff's condition, "we look into his or her subjective state of mind." *Petties v. Carter*, 836 F3d 722, 728 (7th Cir. 2016), *citing Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). In other words, "a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Petties,* 836 F3d.

An inmate does not need to prove he was denied all medical care to establish deliberate indifference and instead can demonstrate "he received constitutionally deficient treatment for the condition." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). "In such cases, we defer to a medical professional's treatment decision 'unless no minimally competent professional would have so responded under those circumstances.'" *Id., quoting Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)

8

"Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Our standard reflects the reality that there is no single "'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett,* 937 F.3d at 1023, *quoting Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Nonetheless, "where evidence exists that the defendant knew better than to make the medical decision that he did, then summary judgment is improper and the claim should be submitted to a jury." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662–63 (7th Cir. 2016)(internal citation omitted). "State-of-mind evidence sufficient to create a jury question might include the obviousness of the risk from a particular course of medical treatment; the defendant's persistence in a course of treatment known to be ineffective; or proof that the defendant's treatment decision departed so radically from accepted professional judgment, practice, or standards that a jury may reasonably infer that the decision was not based on professional judgment." *Id.* at 663 (internal quotation and citations omitted).

Plaintiff entered Hill Correctional Center in October of 2018 and filed his complaint in September of 2020. Defendant Dr. Ek argues the record demonstrates Plaintiff received a variety of treatment during this time for his osteoarthritis and resulting pain including an x-ray, pain medications, a muscle rub, steroid injections, an

9

ace wrap, a low bunk permit, and physical therapy as well as exercises to perform on his own to reduce pain and increase mobility.

In his deposition, Plaintiff focused in particular on the delays in receiving physical therapy. However, there is no evidence before the Court suggesting Defendant Dr. Ek was responsible for the brief one-week delay when Plaintiff first transferred to Hill.

Plaintiff was also unable to attend physical therapy for a brief period when correctional officers failed to allow him to leave his unit. Again, there is no evidence Defendant Dr. Ek was aware Plaintiff was denied access, nor is there any evidence he was involved or responsible for the failure to allow Plaintiff to attend physical therapy.

On July 18, 2019, Plaintiff informed Defendant Dr. Ek he had not received the gym pass the Defendant ordered and so he was again not able to attend physical therapy. Plaintiff has presented no evidence Dr. Ek knew before this visit that Plaintiff had not received the ordered call pass. Defendant Dr. Ek responded by reordering the call pass and Plaintiff was able to attend physical therapy the next day. Again, the evidence does not demonstrate deliberate indifference.

Finally, Plaintiff's physical therapy was canceled when it was reported Plaintiff used his therapy time for other reasons such as lifting weights or using the kiosk. Staff also reported Plaintiff was warned not to engage in other activities during this time.

In his deposition, Plaintiff stated he was not sure, but he probably did grab the weights and it was possible he had used the kiosk. Now in response to the dispositive

motion, Plaintiff adamantly denies he ever touched the weights, used the kiosk, ignored any warning, or violated any rule.

Plaintiff may not contradict his prior deposition testimony for purposes of creating a genuine issue of material fact on a motion for summary judgment. *See Janky v. Lake County Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009); *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir.2005); *Essick v. Yellow Freight Systems, Inc.*, 965 F.2d 334, 335 (7th Cir.1992). Even if the report of Plaintiff's conduct was inaccurate, Plaintiff has not demonstrated Defendant Dr. Ek was responsible. Therefore, Plaintiff cannot demonstrate the Defendant Doctor was deliberately indifferent based on any of the gaps in providing physical therapy.

Plaintiff also claims in his summary judgment response that he told medical staff at each visit he was still suffering in pain which was interfering in his daily activities, and he asked for an MRI or consultation with an outside specialist.

The record demonstrates before Plaintiff met with Defendant Dr. Ek, he was provided with pain medications, an ace wrap, muscle balm, and an x-ray. Plaintiff's first visit with Defendant Dr. Ek was on March 6, 2019. There is no indication in the record to indicate Defendant Dr. Ek was aware of Plaintiff's complaints or medical care prior to this visit.

Plaintiff reported his continued pain and the Defendant responded by continuing the previous medications, adding steroid injections, adding a low bunk permit, and instructing Plaintiff on specific exercises he could do to reduce pain and increase mobility.

11

Plaintiff claims he reported his continued pain to Defendant Dr. Ek on March 15, 2019 and March 21, 2019.  The record does not support Plaintiff's claim and instead indicates Plaintiff met with mental health staff on March 15, 2019 and reported the positive impact of the medication on his knee pain.  However, even assuming Plaintiff had again reported his continued problems with pain, Plaintiff had not yet received the recently ordered steroid injection.  This occurred on March 21, 2019.

Plaintiff's first follow-up visit was on May 10, 2019, when Plaintiff claims he again complained about his pain and the interference with his daily life.  Plaintiff also claims he asked for an MRI or a referral to an unspecified specialist.   However, in his deposition, Plaintiff admitted the steroid shots did help alleviate his pain, but it did not last as long as he anticipated.

Defendant Dr. Ek ordered an additional steroid shot and prescribed physical therapy.  Plaintiff also continued the prescribed pain medication.  Plaintiff then received his second steroid shot on June 6, 2019.

The last clear visit with Defendant Dr. Ek in the record was on July 18, 2019. Plaintiff says he again complained about his continued pain and asked for an MRI and referral to an outside specialist.   Plaintiff also reported he had not been able to attend the prescribed physical therapy because he did not receive the call pass Defendant Ek had ordered.   The Defendant responded by ordering another call pass and Plaintiff received physical therapy the next day.

Plaintiff has failed to provide evidence he "repeatedly complained of enduring pain with no modifications in care." *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir.  2016).

Instead, the record shows Defendant Dr. Ek tried alternative treatments when he met with Plaintiff including steroid shots, exercises, a low bunk permit, and physical therapy in additional to the already prescribed pain medications and treatment. Plaintiff admitted in his deposition some of the treatment provided temporary pain relief.

In his response to the motion for summary judgment, Plaintiff now maintains he complained in every interaction with medical staff that nothing was helping his pain, the pain interfered with his daily activities, and he needed an MRI or referral to an outside specialist.

Again, Plaintiff cannot contract his earlier deposition testimony in an attempt to create a disputed material fact concerning his pain. *See Janky*, 576 F.3d at 362. In addition, Plaintiff has no evidence the treatment which was provided was a radical departure from accepted professional judgment, practice, or standards. *See Sain*, 512 F.3d at 895.

While Plaintiff believes the Defendant should have ordered an MRI or referred him to an outside specialist, there is no indication any medical provider recommended this care. Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to

"reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The motion for summary judgment as to Defendant Dr. Ek is granted. [67].

Plaintiff also has failed to present evidence to support his official capacity claim against Defendant Wexford Health Sources. Wexford can only be held liable under 42 U.S.C. §1983 if it had an unconstitutional policy or practice which caused the alleged deprivation. *See Woodward v Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004); *Monell v. N.Y. City Dep't of Soc. Svcs.*, 436 U.S. 658, 694 (1978). In this case, "Wexford cannot be held liable for damages because there is no underlying constitutional violation." *Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014); *see also Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1035 (7th Cir. 2019); *Powell v. Shah*, 618 Fed.Appx. 292, 296 (7th Cir. 2015); *Williams v. Sood,* 2018 WL 10811477, at *15 (C.D.Ill. March 8, 2018).

Even if Plaintiff had sufficiently demonstrated an underlying violation, he has still failed to establish an Eighth Amendment claim against Wexford. "Plaintiff must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority." *Ridgeway v. Wexford Health Sources*, Inc., 2022 WL 124447, at *5 (S.D.Ill. Jan 13, 2022); *citing Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Plaintiff has made no such showing. The summary judgment motion is granted as to Defendant Wexford.[67].

IT IS THEREFORE ORDERED:

1) Defendants' motion for summary judgment is granted pursuant to Federal Rule of Civil Procedure 56 [67].  The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff.  The case is terminated.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *See also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective).   If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED this 10th day of March, 2023.

                                        s/James E. Shadid
                                  _____
                                      JAMES E. SHADID
                              UNITED STATES DISTRICT JUDGE